# WHYTE *v.* SPRANSY.

EQUITY PRACTICE; EQUITY; RECEIVERS.

1. Where a bill in equity for the appointment of a receiver of the rents and profits of certain real estate pending the trial of an action of ejectment, for a description of the property refers to a trust deed which is attached as an exhibit to the bill, in which deed the property is particularly described, such description by reference will be deemed sufficient, especially on an interlocutory hearing.
2. A court of equity has jurisdiction to appoint, and properly appoints, a receiver of the rents of real estate during the pendency of an action of ejectment, where it appears that the complainant, who had made a loan to the defendants secured by deed of trust on the property, had foreclosed the same by reason of the defendants' default in the payment of the principal, interest, and taxes, and had purchased the same at the sale, but was refused possession of the property and driven to his action of ejectment to recover it, the defendants in the meantime converting to their own use the rents, and that the defendants were insolvent so that they would be unable to respond to any judgment for *mesne* profits, and that the action of ejectment could not be tried for a year or more, because of the condition of the docket of the court in which it was brought.

No. 1150.   Submitted February 21, 1902.   Decided March 18, 1902.

HEARING on an appeal by the defendants from an interlocutory decree of the Supreme Court of the District of Columbia, appointing a receiver of the rents and profits of certain real estate, pending an action of ejectment, in a suit in equity brought for that purpose.            *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an interlocutory decree appointing a receiver for certain improved property pending an action of ejectment for its recovery.

The case made by the bill is this: Rose R. Whyte was on August 25, 1892, the owner of lot 4 in Corcoran's subdivision of square 239, in the city of Washington. On said date, joined by her husband Thomas D. Whyte, she executed a conveyance of said property to Samuel Cross in trust to secure the payment of $8,000 borrowed of George Spransy, and evidenced by two notes for $5,000 and $3,000 respectively, bearing interest at the rate of 6 per cent. per annum, payable semi-annually. The $5,000 note was payable in three years and the $3,000 note in five years after date. The trust deed was attached as an exhibit to the bill and prayed to be taken as a part thereof " and read at the hearing of this cause the same as if fully set out herein."

The trustee was empowered to sell on request of the holder of the notes, upon default in the payment of the principal, or any installment of interest when due, and devote the proceeds to the payment of costs, commissions, taxes and the secured debt.

The grantors, who retained the right of possession until default as aforesaid, covenanted to keep the improvements insured for the security of the lien, to pay all taxes and assessments, and that upon neglect so to do, the holder of the notes should have the right to insure and pay said taxes, the expense to become an additional charge and bear interest at the same rate stipulated in the notes. Interest was paid until August, 1899, but the entire principal, then overdue, remained unpaid. No interest was paid after August 25, 1899, and on August 17, 1901, the property was sold by the trustee in compliance with the terms of the deed of trust.

The complainant, who remained the holder of the notes, bid $10,000 for the property and the same was duly conveyed to him by the trustee on September 4, 1901.

Complainant made repeated demands for the possession of the property of the defendants, who refused to deliver the same, whereupon, on October 1, 1901, he filed an action of ejectment against them for the recovery of the same. Said action of ejectment, owing to the crowded condition of the docket of the trial court, could not be tried for six months

and possibly one year. The averments of the bill conclude with the following paragraph:

" 6. Your complainant avers and charges that the said defendant Rose R. Whyte, and the said defendant Thomas D. Whyte, are wholly insolvent and possessed of no real or personal property in said District of Columbia out of which a judgment for *mesne* profits could be satisfied, and that, knowing this, they have refused to give up possession of said property to your complainant unless he pay to them or either of them a large sum of money as a bonus for their moving from said property; that according to complainant's knowledge and belief the said Thomas D. Whyte has no money or property out of which a judgment against him could be satisfied; and, further, that the said Rose Whyte besides being insolvent is a married woman, and it is doubtful whether a recovery of damages can be had against her for the tort alleged in the declaration in ejectment, she not having at the present time any sole or separate estate, and said tort, at the time the same was committed, did not grow out of any wrong committed by her by reason of her ownership of a sole and separate estate; also, that said defendants failed for two years to pay interest on said trust, and also did not pay any taxes on said property for four years, and permitted said property to be sold for taxes, so that your complainant had to pay out one hundred dollars ($100) bonus to redeem said property, and also had to pay taxes for four years, said taxes and cost of redemption, besides bonus, amounting to five hundred eighty-seven dollars and two cents ($587.02), said bills and redemption certificate being filed herewith and marked Exhibit ' D.' "

Affidavits in support of the bill, and the prayer for the appointment of a receiver to collect and hold the rents and profits pending the action of ejectment, were made by the complainant and the trustee.

Both stated substantially the default in the payment of interest; that defendants had no means of payment without the sale of the property; that the complainant was compelled to redeem the premises from a sale for unpaid taxes and to

pay other taxes; that time was given defendants to sell the property, and that before the day of sale under the trust deed, Thomas D. Whyte requested the sale, as he was unable to pay interest or taxes, and he and his wife had no money or property, etc.

The affidavit of complainant reiterated the charge of the bill that defendants were totally insolvent and had no property whatever in the District of Columbia out of which a judgment for the rents and profits could be satisfied. He further stated that the defendants talked of renting the property from him after the sale, and said they had no money with which to pay the rent. It also appeared that there was a second deed of trust securing another debt of $4,000.

Another accompanying affidavit showed that a search of the records disclosed neither the conveyance to the defendants of any other property nor the assessment of taxes on any other property than that covered by the trust.

The defendant Rose R. Whyte admitted the general allegations of the bill in respect of the indebtedness, mortgage sale, etc. She declined to admit or deny that complainant is the owner in fee-simple of the property, but demanded strict proof of the same. She admits the possession of the property, but denies that any demand had been made thereof save through the action of ejectment.

Her answer then concludes as follows:

" 6th. The defendant denies that she is insolvent, for she says that she is not indebted to any person, excepting for the amount that was covered by the deed of trust referred to in paragraph three of the bill under which the alleged sale took place, if she is liable for that, which she in no way admits. This defendant says that whether she has or has not paid interest upon said notes of three and five thousand dollars as set forth in paragraph six is immaterial, and is advised that she need make no further answer to same. This defendant can neither admit or deny the remaining allegation in said paragraph six; therefore calls for strict proof of same.

"And, further answering, this defendant says that the amount alleged to have been paid for said property is a great

deal less than its value; that the trustee and the complainant well knew that said property was worth a great deal more than the price alleged to have been paid for same by the complainant, and in support of her contention she herewith files the affidavits of three persons who are familiar with the property and its location and with the value of same property.

" That the time said property was offered for sale, to wit, in August, 1901, was the most unfavorable time of the year it could have been offered, for many persons that would have been likely to bid upon and purchase said property were then absent from the city, all of which the complainant was aware of; that she had no personal knowledge of such sale or that it would take place during the month of August; that she is advised that there was scarcely any attendance at the sale, and that the property was knocked off on the second bid, while the complainant and said trustee, Cross, well knew that the price was grossly inadequate.

" That if the complainant owns said house, as he claims, which this defendant specifically denies, he has good and adequate security for his investment, and there is no danger whatever of any loss on his part.

" This defendant denies the right of the complainant to have a receiver appointed to take possession of said property, for this would, in effect, deprive her of her constitutional right to a trial by jury of the issue of fact that may be raised in said action of ejectment.

"And, further answering, the defendant says she is advised that this suit, if the court has jurisdiction to entertain same at all, was prematurely brought.

" She specifically denies that the complainant is entitled to the rents and profits, or that he is entitled to the relief prayed or any relief whatever against this defendant; and, having fully answered, this defendant prays to be hence dismissed."

Three affidavits accompanied this answer, from which it appears that the lot is occupied by a substantial brick and stone dwelling-house which would probably cost $9,000 or $10,000 to construct. Two of the affiants estimate the total value of house and lot to be $14,000, and one $15,000.

The sworn answer of Thomas D. Whyte is substantially the·same as that of his wife, Rose R. Whyte, before stated.

Upon the pleadings and affidavits the justice who presided at the hearing granted the prayer for a receiver.

*Mr. Leo Simmons* for the appellant:

1. The bill has no description of the property and is defective for that reason. Am. & Eng. Encyc. of Pl., Vol. 3, p. 262. The bill itself must contain full description and accurate recital. Reference to exhibits will not do. 57 Fed. Rep. 773.

2. A receiver ·will be appointed to take rents and profits in actions of ejectment only to prevent property from going to waste. *People* v. *Mayor,* 10 Abb. Pr. 111, see 117. It is improper to appoint a receiver in ejectment. *Thomas* v. *Shepard,* 35 Barb. 593; High on Receivers, 555, cited by this court in 14 App. D. C. 326. In the case of *Plitz* v. *Plitz,* 14 Md. 376, the lower court was reversed upon the grounds that there was no waste shown to have been committed upon the property. The court held that the defendant could not be compelled to surrender the possession or pay rents pending the suit, that the facts charged in the bill did not show that the party in possession was committing irreparable damages to the property, *but the bill did charge, and it was admitted, that the defendant was insolvent.*

3. Plaintiff in ejectment is not entitled to recover rents, but only *mesne* profits and that by special rule of the court which is formulated into a law. *Mesne* profits are not rents, but they are damages for detention of the property by the defendant; such are only recoverable in actions of trespass *quare clausum fregit,* and could not be recoverable until after recovery in ejectment except by the rules of practice of our courts. 11 Sergeant & Rawle (Pa.), 55; Bouvier's Dict., Vol. 2, p. 232; Bacon Abr. Eject. H. The complainant in his bill, paragraph 6, says: "Rose R. Whyte being a married woman it is doubtful whether damages can be had against her for the tort." This clearly shows what is asked, viz.: that the

court appoint a receiver to collect rents and apply them to whatever damage may be recoverable. 35 Barb. 593, *supra.*

The defendant will not be deprived of his possession by a receiver, unless it be made to appear that there is a great risk of ultimate loss to the property and insolvency on the part of the defendant, so that he will be unable to respond to the final decree. In the absence of fraud or of any priority between the parties, or of any equities touching the conscience of the defendants in possession, equity invariably refuses to extend its aid of a receiver until plaintiff has established his title at law. High on Receivers, 55–57. *Bateman* v. *The Superior Court,* 54 Cal. 285, held, upon *certiorari,* that the lower court exceeded its jurisdiction in appointing a receiver in an action of ejectment. Said they would have had authority if not for the code, under a statute, Sec. 143 of Practice Act 1851.

4. The equity court is without jurisdiction to entertain a suit for the appointment of a receiver excepting when some other relief is asked and necessarily applicable to the case made. The only reason courts entertain such suits at all is to protect and prevent the property from going to waste, to abide by the ultimate outcome or final decree in the case, viz.: when waste is being committed the court will appoint a receiver to take hold of the property and preserve it. Why should the court take a man's possession from him and hold it for some one else, pending a suit? In ejectment the court does not take and hold the property, but delivers it up to the plaintiff if he recovers a judgment. By the remedy asked in this bill, it is sought to oust the defendants without trial. See *Willis* v. *Trust Co.,* 169 U. S. 295; Dan. Ch. Pr. 1724, 1725; Alex. Ch. Pr. 95; *Teal* v. *Walker,* 111 U. S. 242; *Mead* v. *Lord Orvert,* 3 Atk. 244; *Wilder* v. *Houghton,* 1 Pick. 87; *Boston Bank* v. *Reed,* 8 Pick. 257; *Noyes* v. *Rich,* 52 Me. 115. The mortgagor is not entitled to rents and profits even after default, and even though the land, when sold, should be insufficient to pay the debt. *Hughes* v. *Edwards,* 9 Wheat. (U. S.) 489. See also *Freemen's Saving Co.* v. *Shepard,* 127 U. S. 494; *Grant* v. *Phœnix Ins. Co.,* 121 U. S. 105; *Union Met.*

*Life Ins. Co.* v. *Union Mill Plaster Co.,* 37 Fed. Rep. 293; *Rider* v. *Bateman,* 93 Fed. Rep. 16; *Life Ins. Co.* v. *Grant,* 3 MacA. 220; *Smith* v. *White,* 86 N. W. Rep. 930.

5. If the defendant is turned out of possession by the equity court through its receiver, how can the action of ejectment be maintained? The suit is to get possession from the defendant, and if the defendant is not in possession, to whom would the court direct its writ?

*Mr. J. J. Darlington* and *Messrs. Lambert & Baker* for the appellee:

1. The property involved in this suit is fully described in the deed made by the appellants to the trustee, and that deed is filed with the bill and " prayed to be taken as a part hereof and read at the hearing of this cause the same as if fully set out herein."' This is all that the law requires, and we know of no authorities, nor are any cited by the appellants, to sustain their first assignment of error.

2. Courts of equity appoint receivers upon application of a party interested in the subject-matter, where there is no dispute about the title and the court believes that it is to the best interest of all parties to have a receiver to preserve both the *corpus* and profits; and such appointment does not involve the determination of any right, nor does it determine the title of either party, the receiver taking possession of the property and holding the same, together with the rents and profits, until a final adjudication. *Chase's Case,* 1 Bland, 212; *Cole* v. *C. Neal,* 3 Md. Chan. 185; *People and Taylor* v. *Mayor,* 10 Abb. Pr. 111; *Rogers* v. *Marshal;* 6 Abb. Pr. (N. S.) 457; *Frisby et al.* v. *Timanus,* 12 Fla. 300; *Payne* v. *Nichols,* 37 How. Pr. 222; *Bitting et al.* v. *Teneyck,* 85 Ind. 357; *Mays* v. *Rose et al.,* Freem. (Miss.) 703. But in this case there is no question but that the rents and profits of this property belong to the appellee, for here the deed of trust is foreclosed, and all rights of the donors in the deed have become vested in the appellee. The purchaser of land sold under a deed of trust is entitled to the rents and profits

accruing from the date of his purchase, and also to crops that may be growing upon the land at the time of the sale. *Hayden* v. *Burkemper,* 101 Mo. 644; *Taliaferro* v. *Gay,* 78 Ky. 496; *Cowen* v. *Arnold,* 58 Hun, 437; *Perley* v. *Chase,* 79 Me. 519; Pingree on Mortgages, Sec. 832.

The case of *Teal* v. *Walker,* 111 U. S. 249, is the case relied upon by the appellants to sustain their contention that they are entitled to the rents and profits of this property until a final determination of the ejectment suit. Upon an examination of that authority, it will be found that it arose under a statute, which changed the nature of a common-law mortgage or deed of trust. This case was fully considered by the Court of Appeals of Maryland in the recent case of *Barron* v. *Whiteside,* 89 Md. 448. The court there held that the Supreme Court decided nothing more than that, where a mortgagor is allowed to remain in possession, and no action or demand is made, he is to be treated as the owner and entitled to the rents and profits. In the case before the Maryland court, the party had demanded the rents and profits, although no actual possession of the property was taken. The court held that from the time of the demand the rents and profits belonged to the mortgagee. See also *Dow* v. *The Railroad Co.,* 124 U. S. 652; *Freedman* v. *Shepherd,* 127 U. S. 502; *U. S. Trust Co.* v. *Railroad Co.,* 150 U. S. 308. If the mortgage or deed of trust had not been foreclosed, there can be no doubt that the appellee would have been entitled to have a receiver appointed upon filing a bill to foreclose, and this without regard to the question whether or not he would be entitled to the rents and profits. See *Hitz* v. *Jenks,* 123 U. S. 306; *Argall* v. *Pitts et al.,* 78 N. Y. 239; *American Bridge Co.* v. *Heidelbach,* 94 U. S. 800; *Grant* v. *Phœnix Ins. Co.,* 121 U. S. 116; *Shepherd* v. *Pepper,* 133 U. S. 626. Upon the subject of the appointment of receivers, see *American National Bank* v. *Northwestern Mutual Life Ins. Co.,* 89 Fed. Rep. 612, which distinguishes *Teal* v. *Walker* and similar cases.

3. Thus it will be seen the authorities hold that, wherever there is danger of injury to the security pending foreclosure,

a receiver may be appointed, and that, while the mortgagee is entitled to the rents and profits, that question does not arise on the appointment of a receiver, and is only to be determined upon the statement of the receiver's account at the final determination of the suit. Some of the authorities hold that, besides insolvency on the part of the mortgagor, there must be evidence of waste. In this case there is such waste as is referred to by the authorities, if under circumstances, as set out in this record, it is necessary that such waste should appear. *Central Trust Co.* v. *Railroad Co.,* 94 Fed. Rep. 281; Beach on Receivers, Sec. 499; High on Receivers, Sec. 576; *Mortgage Co.* v. *Turner,* 95 Ala. 272. See also *Merritt et al.* v. *Gibson et al.,* 129 Ind. 155; *Payne* v. *Atterbury,* Harr. (Mich.) 414; *Scott* v. *Scott,* 13 Ir. Eq. 212.

Mr. Justice SHEPARD delivered the opinion of the Court:

The first assignment of error is that the court erred in entertaining the bill because it contained no description of the property except by reference to exhibits.

The record does not show that this point was raised in the hearing below. It has no merit, however, because the property is particularly described in the trust deed which was attached as an exhibit and by direct reference made a part of the bill.

Strictly speaking, the bill should contain all such material allegations; but the reference was sufficient, certainly, for the purposes of the interlocutory hearing.

The defendants' answers substantially admit the title of the complainant under the trustees' conveyance and his right to the possession of the premises. They show no ground of defense whatever to the depending action of ejectment that was made necessary by their refusal to surrender possession after their title had passed. It is scarcely worth while to say, that the allegations that the property was offered for sale at an unfavorable season of the year and in consequence sold for considerably less than its actual

value, constitute no ground of relief at law. And if they had been made the grounds of a bill in equity to set aside the sale for illegality or irregularity, or of a cross-bill in this proceeding for the same purpose, they would be clearly insufficient to entitle the defendants to such relief. *Anderson* v. *White,* 2 App. D. C. 408.

The direct charge that the defendants are insolvent and have no property of any kind wherefrom a judgment for *mesne* profits in the action of ejectment could be satisfied, supported by the accompanying affidavits, is not fairly met by the general denial of insolvency as it appears in the paragraph of the answer recited in the preliminary statement.

The second assignment of error denies the power of the court to take possession of the property through a receiver charged with the preservation of the rents pending the action of ejectment, and presents a question determinable by the following conditions: The plaintiff holds a clear title to the premises and has been entitled to the possession and enjoyment thereof since September 4, 1901. Defendants have remained in possession since said date, without title or license, and have converted to their own use the rents and revenues of the property. Plaintiff, owing to the crowded condition of the docket of the court of law, will probably not be able to procure a trial and judgment in his action of ejectment within a year. Defendants, who are insolvent, would, in the meantime, receive the rents of the property, and when plaintiff shall recover judgment therefor will have no property that can be subjected to execution thereon.

We have no doubt of the jurisdiction of the court to appoint a receiver under these conditions, and are of the opinion that its discretion was correctly exercised in this case. *Chase's Case,* 1 Bland, 206, 212, 213; *People* v. *Mayor,* 10 Abb. Pr. 111, 117; *American Freehold Mortgage Co.* v. *Turner,* 95 Ala. 272, 276; *Vause* v. *Woods,* 46 Miss. 120, 127, 128; High on Receivers, Secs. 557 and 558.

Appellants concede the power where actual waste is being committed, or dilapidation suffered, but deny it where the conduct merely extends to the collection and appropriation, or enjoyment of the rents and revenues, notwithstanding they may be irretrievably lost by the plaintiff who is undoubtedly entitled to them. We are unable to recognize any substantial difference between the two conditions. In either case, the jurisdiction of equity is invoked to prevent an irreparable injury to the plaintiff whose title is admitted or made reasonably certain, by the act of one wrongfully in possession of his property. That the injury in one case consists in pecuniary loss through deterioration in the value of the improvements, and in the other in a like pecuniary loss through the appropriation by a wrongdoer of the value of the use of the same improvements, seems to us wholly immaterial.

In either case the plaintiff would sustain a direct pecuniary loss for which the law can furnish no adequate or complete redress.

This furnishes the ground of the jurisdiction of a court of equity. Taking jurisdiction, it furnishes the remedy necessary for relief, which in this case was the appointment of the receiver.

For the reasons given, the decree will be affirmed with costs and the cause remanded for such other and further proceedings as may become necessary. It is so ordered.

*Affirmed.*

[Mr. Justice CLABAUGH, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this case, in the place of Mr. Chief Justice ALVEY — REPORTER.]